**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

```
                                 :
TOMMIE H. TELFAIR,               :
                                 :
              Plaintiff,         :         Civil Action No.
                                 :         08-0731 (WJM)
         v.                      :
                                 :
KAREN P. TANDY, et al.           :
                                 :         O P I N I O N
              Defendants.        :
                                 :
```

**MARTINI**, District Judge:

This matter comes before the Court upon Plaintiff's filing of a slew of motions, letters, notices and analogous documents, see Docket Entries Nos. 43-68 and 70-72, submitted after this Court's grant of summary judgment as to some Defendants.  See Docket Entries Nos. 41-42.  For the reasons detailed below: (a) Plaintiff's above-listed submissions will be dismissed; (b) stay as to Plaintiff's claims previously stayed by the Court will be extended; (c) Plaintiff's claims proceeded past sua sponte dismissal and not disposed of in the Court's summary judgment decision will be dismissed without prejudice, and Plaintiff will be directed to file a clear and concise amended pleading; (d) the limited order of preclusion imposed upon Plaintiff will be adopted for ninety days; and (e) Plaintiff will be ordered to show cause as to why the order of preclusion should not govern the remainder of this matter and Plaintiff's future non-emergent pro se, in forma pauperis civil actions in this District.

## I.   BACKGROUND

Plaintiff's instant action appears to be both the first civil rights action commenced by Plaintiff in this District and his sole currently pending civil rights action.  Other actions, instituted against or by Plaintiff, as well as the proceedings instituted against a certain Catrina R. Gatling ("Gatling"), Plaintiff's former girlfriend, are closely related to the case at bar.  Therefore, a brief overview of these actions and a summary of the instant matter appear helpful.

### A.   <u>Other Actions in This District</u>

A detailed overview of the criminal proceedings instituted against Plaintiff and Gatling, as well as all civil actions commenced by Plaintiff in this District, was already conducted in <u>In re Telfair</u>, 745 F. Supp. 2d 536 (D.N.J. 2010), a decision providing citations to all relevant docket entries in each such action.  Therefore, a brief summary should suffice.

The events that gave rise to Plaintiff's criminal prosecution began to unfold on September 5, 2006, when police was dispatched to investigate a report of gunfire at a certain residence in Newark, New Jersey.  <u>See</u> <u>id.</u> at 538. Upon seeing several bullet holes in the back door and empty shell casings nearby, police entered the residence with consent of two occupants.  <u>See</u> <u>id.</u>  A search of the residence produced large amounts of various controlled substances.  <u>See</u> <u>id.</u>  The occupants

2

stated that the substances belonged to an individual named "Hassan Gatling," which was Plaintiff's alias; they also stated that they were employed by Plaintiff to pack these substances, seemingly, for retail sale. See id. Consequently, an arrest warrant was issued as to Plaintiff on September 8, 2006, and – four and a half months later, i.e., on January 23, 2007 - he was arrested at the home of Gatling, who was, by then, notified by the law enforcement authorities that Plaintiff was subject to arrest warrant and, hence, knew that she was harboring a felon. See id. Plaintiff was indicted (and then re-indicted, twice) on drug-related offenses. See id.

Plaintiff initially retained a certain Paul Bergrin ("Bergrin") as his defense counsel. See id. However, Plaintiff swiftly terminated Bergrin's representation, and a certain James Kimball ("Kimball"), a CJA attorney, was appointed to represent Plaintiff. See id. at 540. Not long thereafter, Plaintiff terminated Kimball's appointment, and a certain Michael Pedicini ("Pedicini"), another CJA attorney, took over. See id. at 541. Plaintiff sent threatening letters to Kimball and Pedicini and filed disciplinary grievances against Bergrin, Kimball and Pedicini with the Office of Attorney Ethics ("OAE"); in addition, Plaintiff instituted legal malpractice suits against Pedicini and Bergrin (and, potentially, against Kimball too). See id. at 541-

3

46.  He also filed disciplinary grievances with the OAE against his prosecutors.  See id. at 565-66.

When Plaintiff's then-latest defense counsel, that is, Pedicini, learned about Plaintiff's legal malpractice suit against him, Pedicini resigned to avoid conflict of interest. See id. at 565.  By that time, Plaintiff was already convicted by his jury.  See id. at 543.

During pre-sentencing stages of his criminal prosecution, Plaintiff - while being represented by three different defense attorneys[1] – filed in his criminal docket fifty-one pro se applications, including motions, petitions and various letters (many of which replicated each other many times over) totaling one thousand one hundred thirty six pages; some of these submissions made allegations against this Court and referred to the instant proceedings.[2]  See id. at 541, 583-84.

Meanwhile, Gatling was charged with harboring a felon, released on bail on the day of her arrest and, eventually, pled guilty.  See id. at 550-51.

---

[1]  Since Plaintiff's criminal proceedings are still underway (being at the sentencing stage), Plaintiff is now represented by his fourth defense counsel, another CJA attorney, John A. Azzarello ("Azzarello").  See USA v. Telfair, Crim. Action No. 08-cr-0757 (DMC) (D.N.J.), Docket Entry No. 79.

[2]  Although Judge Dennis M. Cavanaugh ("Judge Cavanaugh"), presiding over Plaintiff's criminal prosecution, twice ordered the Clerk to refuse acceptance of any Plaintiff's pro se submissions, these orders failed to halt Plaintiff's filings.

4

About a year after his arrest, and while still awaiting resolution of his criminal proceedings, Plaintiff initiated the instant matter, pursuant to <u>Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).[3]  A year later, he initiated another <u>Bivens</u> action, challenging the same transactions and, in addition, raising premature § 2255 habeas challenges; another year later, he commenced one more <u>Bivens</u> action challenging the same.  <u>See id.</u> at 549.  Plaintiff's complaints in those two matters yielded seventy eight pages.[4]  <u>See id.</u> at 587.

On June 3, 2010, Plaintiff filed a series of documents mimicking a disciplinary grievance submitted on behalf of himself and Gatling.  <u>See id.</u> at 551-60.  Although this set of submissions was reduced to mere four docket entries, it yielded three hundred forty two pages, many of which replicated one another over and over again.  <u>See id.</u> at 584.  This set of submissions was determined to be not a <u>bona fide</u> ethics

---

[3]  As of this Court's issuance of this Memorandum Opinion and accompanying Order, Plaintiff's submissions accounted for forty-nine docket entries in this matter, totaling one thousand and seventeen pages, many of which replicated each other many times over.  <u>See</u> <u>generally</u>, Instant Action, Docket.  The content of these submissions is discussed <u>infra</u>.

[4]  Plaintiff's actions raising <u>Bivens</u> challenges substantively identical to those raised in this matter were dismissed as duplicative (with Plaintiff's § 2255 challenges dismissed as premature).  <u>See</u> <u>Telfair v. Holder</u>, Civ. Action No. 10-0048 (DMC) (D.N.J.), and <u>Telfair v. Holder</u>, Civ. Action No. 09-2806 (SDW) (D.N.J.).

application but a mix of: (a) Plaintiff's <u>Bivens</u> claims repeating the challenges at the heart of the instant matter; (b) habeas-like claims; and (c) § 1983 allegations raised without proper standing on behalf of Gatling.  <u>See</u> <u>Telfair et al. v. Office of the U.S. Attorney</u>, Civ. Action No. 10-2958 (GEB) (D.N.J.).  The decision dismissing these claims and declining to initiate a disciplinary investigation in this District also imposed a limited order of preclusion upon Plaintiff.  <u>See</u> <u>id.</u>, Docket Entries Nos. 7 and 8.  Pursuant to that limited preclusion order:

a.    in any currently pending action, such as the instant matter, Plaintiff was directed to seek leave from the presiding judge to make any unauthorized <u>pro</u> <u>se</u> submission; he was directed to do so by filing a one-page request averring that Plaintiff wished to raise <u>bona</u> <u>fide</u> new challenges and summarizing, clearly and concisely, the what exactly he wished to assert;[5]

and

_____

[5]  It appears that the limited order of preclusion relaxed, in a way, Judge Cavanaugh's bar on the Clerk's acceptance of Plaintiff's <u>pro</u> <u>se</u> submissions by allowing Plaintiff to make such filings upon obtaining leave from Judge Cavanaugh with regard to each proposed <u>pro</u> <u>se</u> filing.  Plaintiff, however, failed to comply with the limited order of preclusion directing him to seek leave from Judge Cavanaugh.  <u>See</u> <u>USA v. Telfair</u>, Crim. Action No. 08-cr-0757 (DMC) (D.N.J.), Docket Entries Nos. 78, 81 and 82 (reflecting Plaintiff's unauthorized <u>pro</u> <u>se</u> filings made in his criminal matter after the entry of the preclusion order).

b.   with regard to any future civil rights action filed in this

District <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u> (except for emergent

<u>Bivens</u> actions), Plaintiff was directed to seek leave from

the Clerk to commence such action; he was directed to do so

by filing a one-page request averring that Plaintiff wished

to raise <u>bona</u> <u>fide</u> new claims and summarizing facts of

Plaintiff's proposed challenges clearly and concisely.

<u>See</u> <u>id.,</u> Docket Entry No. 8.

## B.   **Plaintiff's Appellate Challenges**

While Plaintiff filed numerous appeals with regard to his still-ongoing criminal prosecution and with regard to the instant matter, his only appellate proceeding pending at this juncture is the one filed with regard to Plaintiff's submissions mimicking a disciplinary grievance.   <u>See</u> <u>Telfair et al. v. Office of US</u> <u>Attorney</u>, USCA Civ. Action No. 10-4193 (3d Cir.).

In that appeal, Plaintiff filed a forty-eight-page "Notice to the Appellate Court, In Support of Due Process Violations, and Deliberate Indifference to the Constitution."   <u>See</u> <u>id.,</u> Docket Entry dated Apr. 5, 2011 ("<u>Notice</u>").[6]  Plaintiff also filed the

---

[6]  In addition to the <u>Notice</u>, Plaintiff also filed, in his currently pending appellate proceedings: (a) a twenty-five-page "Response," <u>see</u> <u>Telfair et al. v. Office of US Attorney</u>, USCA Civ. Action No. 10-4193 (3d Cir.), Docket Entry dated Apr. 5, 2011; (b) a "Notice of Petition for Review," <u>see</u> <u>id.,</u> Docket Entry dated Apr. 25, 2011; (c) a two-hundred-ninety-two-page "Amended Notice of Petition for Review," <u>see</u> <u>id.,</u> Docket Entry dated May 9, 2011 (consisting of five parts and replicating many pages already made part of Plaintiff's above-described appellate

same <u>Notice</u> in this matter, expressly addressing it to this Court and, hence, requesting this Court's ruling on his submission.[7] <u>Compare</u> Instant Matter, Docket Entry No. 72, to <u>Telfair et al. v. Office of US Attorney</u>, USCA Civ. Action No. 10-4193 (3d Cir.), Docket Entry docketed on April 5, 2011.

Plaintiff's <u>Notice</u> detailed his reading of law, <u>see</u> <u>generally</u>, <u>id.</u>, and asserted that he was unduly prejudiced by Judge Cavanaugh's order directing the Clerk not to accept any Plaintiff's <u>pro</u> <u>se</u> submissions in Plaintiff's criminal proceedings.  <u>See</u> <u>id.</u> at 3-5.  In addition, seemingly in connection with the order of preclusion entered in the currently-on-appeal action addressing Plaintiff's submissions styled to mimic a disciplinary grievance, Plaintiff asserted that his

---

submissions, raising claims on behalf of Gatling, and challenging Plaintiff and Gatling's criminal proceedings before Judge Cavanaugh); (d) a "Letter Brief," <u>see</u> <u>id.</u>, Docket Entry dated May 27, 2011; (e) one more "Amended Notice of Petition for Review," <u>see</u> <u>id.</u>, Docket Entry dated May 27, 2011, a seventy-three-page submission; and (f) a seventeen-page "Amended Urgent Grievance," <u>see</u> <u>id.</u>, Docket Entry dated June 3, 2011.  The entirety of Plaintiff's submissions made with the Court of Appeals during less than two months is four hundred sixty one pages.

[7]  The sole distinction between these two submissions is that, in the document filed in the instant matter, the line above caption reads "In the United States District Court for the District of New Jersey" (implying Plaintiff's request for this Court's ruling on his submission), while – in the document filed in <u>Telfair et al. v. Office of US Attorney</u>, USCA Civ. Action No. 10-4193 (3d Cir.) – the line above caption reads "In the United States Court of Appeals for the Third Circuit," seemingly implying Plaintiff's simultaneous request for the Court of Appeals' ruling on the same submission.

8

inability to make as many and as lengthy filings as he desires,
in every action Plaintiff is a party to, endangers Plaintiff's
ability to meet temporal procedural requirements.[8]  See id. at
10-11.  He also asserted that the filing limitation might prevent
him from "managing and maintaining the momentum" of his
litigations.[9]  See id. at 12.

### C.   Procedural History of the Instant Matter

The instant matter was commenced upon Plaintiff's submission
of a Bivens complaint; the Clerk received it on February 7, 2008.
See Instant Matter, Docket Entry No. 1.  Upon screening
Plaintiff's complaint, this Court concluded as follows:

> [Plaintiff], a federal prisoner currently confined at
> the Hudson County Correctional Center in South Kearny,
> New Jersey, . . . brings a civil rights complaint
> against the following defendants: Karen P. Tandy,
> Administrator of the . . . DEA; Gerard P. McAleer,
> Director [of the] DEA in Newark; 1-50 unknown DEA

---

[8]  Plaintiff asserted that the Clerk's Office might be
unavailable on weekends and holidays, or during certain hours, or
as a result of incremental weather or failure of the electronic
filing system.  However, since Plaintiff is a prisoner, his
submissions are subject to the prisoner's mailbox rule.  Thus,
the Clerk's hours, weather and potential electronic failure have
no relevance to Plaintiff, since his applications, if received by
this District, are deemed submitted on the date when he hands
them to his prison officials for mailing to the Court.

[9]  These statements are accompanied by copies of Plaintiff's
letters to Azzarello (i.e., Plaintiff's current defense counsel
in his criminal proceedings before Judge Cavanaugh); these
letters state Plaintiff's views as to which post-conviction and
appellate applications Azzarello shall make on behalf of
Plaintiff. Copies of Plaintiff's letters are accompanied by a
letter from Azzarello to Plaintiff stating that Azzarello sees no
factual bases for filing many applications desired by Plaintiff.

agents; 1-50 unknown federal agents; Ray McCarthy,
Chief of Police [in] Newark; Murad Muhammed [an officer
with the] Newark Police . . . ; 1-50 unknown police
officers; Paul W. Ber[g]rin, Esq.; and Christopher
Christie, United States Attorney for the District of
New Jersey. . . . [Plaintiff] alleges that on January
23, 2007, he was taken into custody by DEA agents, who
used terroristic threats to force [him] to admit to
drug trafficking crimes or cooperate with the agents in
their investigation. . . . [Plaintiff] further
alleges that he had repeatedly requested an attorney
during his custodial interrogation, but his request was
denied. . . . [Plaintiff] alleges that he was
pressured to take the Government's plea offer, and not
to make any motions with respect to the criminal
charges against him. . . . [Plaintiff] claims that
the defendants violated his constitutional rights under
the Fourth, Fifth, Sixth, and Fourteenth Amendments.
Namely, he asserts claims of false arrest, unlawful
search and seizure, falsifying documents and evidence,
intimidation, criminal threats, coercion, denial of his
Miranda rights, denial of medical treatment, theft or
conversion of personal property, denial of due process
and equal protection, selective and malicious
prosecution, and denial of his right to a speedy trial.

Id. Docket Entry No. 14, at 1-5.

When the Court was screening Plaintiff's pleadings, the

United States Supreme Court was yet to issue its pivotal

standard-of-review case, Ashcroft v. Iqbal, 129 S. Ct. 1937

(2009).  Thus, this Court relied on Erickson v. Pardus, 551 U.S.

89 (2007), in order to screen Plaintiff's pleadings[10] under the

_____

[10]  Shortly after submitting his original complaint,
Plaintiff filed – together with his in forma pauperis application
- his amended complaint.  See Instant Matter, Docket Entry No. 4.
The Court screened these two sets of pleadings jointly.

10

prior standard-of-review test set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957).[11]  <u>See id.</u> Docket Entry No. 14, at 8.

With regard to Plaintiff's false arrest claims, the Court concluded that - in light of Plaintiff's assertion "that the DEA agents and other police officers had no reasonable suspicion or probable cause to arrest him" - these claims had to be proceeded past the <u>sua sponte</u> dismissal stage.  <u>See id.</u> at 14.  Then, discussing the interplay between <u>Wallace v. Kato</u>, 549 U.S. 384 (2007), and its predecessor case, <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), this Court found that a stay was warranted as to these claims.[12]  <u>See id.</u> at 19.

The Court dismissed Plaintiff's claims against Bergrin for failure to meet the color-of-law requirement, <u>see id.</u> at 21, and also dismissed Plaintiff's claims against his prosecutors on the grounds of prosecutorial immunity.  <u>See id.</u> at 23.  While these lines of claims were dismissed with prejudice, Plaintiff's claims alleging malicious prosecution were dismissed as unripe in light

---

[11]  In <u>Iqbal</u>, the Supreme Court conclusively archived the <u>Conley v. Gibson</u> standard of review and clarified that the standard of review set forth in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), should apply to civil rights claims of all litigants, including confined individuals proceeding <u>pro se</u>.

[12]  Since Plaintiff alleged that the DEA agents and Newark police officers conducted an unlawful search incidental to his arrest, this Court reached the same conclusion with regard to Plaintiff's unlawful search claims and stayed those claims too.

of Plaintiff's facial inability to assert facts in support of some elements of this tort. See id. at 24.

Addressing Plaintiff's allegation that "his Miranda rights were violated," this Court dismissed these claims on the grounds that police questioning without a Miranda warning cannot give rise to a cognizable Bivens claim. Id. at 25-26. Then, turning to Plaintiff's due process, speedy trial and equal protection allegations, as well as to Plaintiff's property claims, this Court dismissed those challenges for failure to state a claim upon which relief can be granted or as barred by FTCA procedural requirements. See id. at 28-29.

Consequently, the Court directed service solely with regard to: (a) Plaintiff's allegations that Plaintiff was denied medical care for his allegedly broken hand; and (b) Plaintiff's claims against Defendants other than those who were implicated only in Plaintiff's allegations expressly dismissed by the Court.[13] See id. at 27-28.

After process was served on all Defendants other than Bergrin and the United States Attorney (i.e., on Defendants Karen Tandy ("Tandy"), Gerard McAleer ("McAleer"), and Messrs. McCarthy and Muhammad), Tandy and McAleer moved for summary judgment

---

[13] The Clerk correctly terminated the then-acting United States Attorney for the District of New Jersey and Bergrin as Defendants in this matter. The Clerk, however, failed to duly terminate all other Defendants affected by this Court's dismissal of Plaintiff's other claims.

asserting that Plaintiff sued Tandy and McAleer solely on the grounds of their supervisory positions.  See id., Docket Entry No. 30.  This Court granted Tandy and McAller's motion, hence dismissing all Plaintiff's claims against them.  See id., Docket Entry No. 41.

Meanwhile, Plaintiff kept filing a slew of submissions.  Specifically, he filed:

a.   a ten-page "Petition in Support of Civil Motion," see id. Docket Entry No. 12;

b.   a nineteen-page "Memorandum of Law in Support of Bail Motion and Due Process Violations" raising issues not raised in his original or amended pleadings, see id. Docket Entry No. 13;

c.   an appeal challenging this Court's dismissal of facially meritless claims, see id. Docket Entry No. 20;

d.   a letter asserting that this Court is "sabotaging" Plaintiff's challenges, see id. Docket Entry No. 25;

e.   a letter informing this Court about Plaintiff's legal malpractice suit against Bergrin," see id. Docket Entry No. 31;

f.   a "Declaration in Support of Plaintiff-petitioner(s) Civil-Action," which asserted that this Court was not providing Plaintiff with "constitutionally fair administration of justice," see id. Docket Entry No. 32;

g.   a "Declaration in Support of Petitioner(s)," largely maintaining the same, see id. Docket Entry No. 33;

h.   another "Declaration" asserting, once again, the same, see id. Docket Entry No. 34;

i.   a letter addressed to the Court of Appeals requesting a speedier decision with regard to Plaintiff's appeal of this Court's sua sponte screening determinations, see id. Docket Entry No. 37;

j.   a Rule 60 motion, see id. Docket Entry No. 38;

k.   a copy of Petitioner's threatening letter addressed to Pedicini, who was then representing Petitioner in the criminal proceedings before Judge Cavanaugh, see id. Docket Entry No. 39;

l.   a letter informing this Court that Plaintiff was applying for certiorari from the United States Supreme Court,[14] see id. Docket Entry No. 43;

---

[14]   Thus far, the Supreme Court denied Plaintiff's application for a writ of mandamus, see In re Telfair, 130 S. Ct. 511 (2009), his request for a writ of prohibition, see In re Telfair, 130 S. Ct. 511 (2009), his application for certiorari, see In re Telfair, 130 S. Ct. 631 (2009), his application for rehearing, see In re Telfair, 130 S. Ct. 1044 (2009), his request for reconsideration of denial of rehearing, see In re Telfair, 130 S. Ct. 1045 (2009), and his request for reconsideration of denial of reconsideration of denial of rehearing, see In re Telfair, 130 S. Ct. 1045 (2009).

m.   a letter detailing to this Court the developments in
Plaintiff's application for certiorari, see id. Docket Entry
No. 44;

n.   a thirty-page submission consisting of various documents
related to Plaintiff's criminal prosecution, see id. Docket
Entry No. 45;

o.   a thirty-six-page "Conditional Application or Alternative
Petition," notifying this Court of Plaintiff's beliefs that
"the government and state officials have conspired to the
malicious manifest deprivation of rights and the
perpetration of a fraud tantamount to impeachable-offenses,"
see id. Docket Entry No. 46;

p.   an "Affidavit of Merit in Lieu of Certification in Support
of Legal-Matter(s)" reproducing the questions that were
allegedly asked during Plaintiff's polygraph test
administered in connection with Plaintiff's criminal
prosecution before Judge Cavanaugh, see id. Docket Entry No.
47;

q.   a twenty-nine-page "Joinder Tort Complaint & Motion to
Consolidate" expressing Plaintiff's beliefs that
"prosecutions . . . have been initiated with unethical
conduct and character, and with purpose of covering for
state & government fraud and/or corruption, tantamount to

15

wrongful arrest and the perpetration of a fraud & bad faith prosecution," see id. Docket Entry No. 48;

r.  one more, thirty-one-page-long, "Joinder Tort Complaint," alleging the same, see id. Docket Entry No. 49;

s.  a thirty-one-page letter repeating the same, see id. Docket Entry No. 50;

t.  a thirty-three-page letter reciting on the same, see id. Docket Entry No. 51;

u.  a thirty-six-page submission stating the same once again, see id. Docket Entry No. 52;

v.  a sixty-one-page "Conditional Application or Alternative Petition for Review (Amended) in Conjunction with . . . Affidavit of Merit(s) in Support of Civil/Tort Action," stating the same one more time, see id. Docket Entry No. 53;

w.  one more copy of the same "Conditional Application," see id. Docket Entry No. 54;

x.  an application for emergent relief seeking immediate trial in this matter, even though no responsive pleadings were served by McCarthy and Muhammad, see id. Docket Entry No. 55;

y.  one more copy of the same emergent application, see id. Docket Entry No. 56;

z.  a "Conditional Application for Order to Show Cause" seeking this Court's order directing the United States Attorney

General, the United States Solicitor General, the Chief Judge in this District and all terminated and not terminated defendants to "show cause as to why the hereof pleadings should not issue against them in accordance with prayer of said pleadings," see id. Docket Entry No. 58;

aa.  a paraphrased version of the same, see id. Docket Entry No. 59;

bb.  a twenty-two-page motion for reconsideration asserting that Plaintiff should have standing to pursue claims on behalf of Gatling, see id. Docket Entry No. 61;

cc.  a twenty-five-page "Petition for Issuance for Order to Show Cause," asserting effectively the same, see id. Docket Entry No. 62;

dd.  a forty-six-page "De Novo Petition for Review," alleging the same, see id. Docket Entry No. 63;

ee.  a fifteen-page "Application for Leave to File De Novo Petition for Review," see id. Docket Entry No. 64;

ff.  a twenty-five-page document mimicking a disciplinary grievance identical to the one that gave rise to Telfair et al. v. Office of the U.S. Attorney, Civ. Action No. 10-2958 (GEB) (D.N.J.), see id. Docket Entry No. 65;

gg.  a forty-one-page "Joinder Tort Complaint" stating claims on behalf of Plaintiff and Gatling with regard to Plaintiff's stayed arrest, Gatling's arrest and prosecution, as well as

17

allegations analogous to those raised in the submissions mimicking a disciplinary grievance, <u>see</u> <u>id.</u> Docket Entry No. 66;

hh. a forty-three page letter repeating the same "Joinder Tort Complaint," <u>see</u> <u>id.</u> Docket Entry No. 67;

ii. a seventy-five-page "Notice of Fifth Amended Complaint," stating allegations on behalf of Gatling and Plaintiff with regard to the claims stayed in this matter and repeating allegations analogous to those raised in the submissions mimicking a disciplinary grievance, <u>see</u> <u>id.</u> Docket Entry No. 68.

Although the above-mentioned preclusion order was entered against Plaintiff and directed him to seek leave from this Court in order to make any unauthorized <u>pro</u> <u>se</u> filing in this matter, Plaintiff ignored that preclusion, and continued with his filings by submitting, in this matter:

jj. an eighty-page compilation appraising this Court about documents filed by Plaintiff in his legal malpractice suit against Pedicini and in Plaintiff's appeal to the Court of Appeals with regard to dismissal of his claims presented by means of submissions styled to mimic a disciplinary grievance, <u>see</u> <u>id.</u> Docket Entry No. 71; and

kk.  a copy of the <u>Notice</u> that was also filed with the Court of

Appeals, and the content of which was detailed by this Court

<u>supra</u>.  <u>See</u> <u>id.</u> Docket Entry No. 72.

In other words, as of now, Plaintiff entered on the docket

in this matter *one thousand seventeen* (1017) pages by means of

forty-seven docket entries, <u>see</u> <u>generally</u>, Docket, repeating the

same filings over and over again, re-raising already dismissed

claims and ignoring this Court's guidance that Plaintiff has no

standing to pursue claims on behalf of Gatling.  <u>See</u> <u>id.</u> Docket

Entry No. 60.

## II.  STANDARD OF REVIEW

The standard of review under Rule 8 was clarified in the

Supreme Court's <u>Iqbal</u> decision since this Court's screening of

Plaintiff's original and amended complaint.

In determining the sufficiency of a complaint, the Court

must be mindful to construe the facts stated in the complaint

liberally in favor of the plaintiff.  <u>See Erickson v. Pardus</u>, 551

U.S. 89 (2007); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United

States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  Indeed, it is

long established that a court should "accept as true all of the

[factual] allegations in the  complaint and reasonable inferences

that can be drawn therefrom, and view them in the light most

favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>,

132 F.3d 902, 906 (3d Cir. 1997).  However, while a court will

accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

Addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, the Court of Appeals for the Third Circuit provided the courts in this Circuit with detailed and careful guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Id. at 1966.  [Hence] "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965 & n.3. . . . [Indeed, it is not] sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct."  Id.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937:

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557. . . . A claim has facial plausibility [only] when the plaintiff pleads factual content . . . . Id. at 556. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [,i.e., by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn . . . the discovery process. Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint alleges any of the elements] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope to develop facts through discovery].

<u>Iqbal</u>, 129 S. Ct. at 1949-54.

## II.  DISCUSSION

### A.  <u>Stayed Claims</u>

#### 1.  Pertinent Legal Regime

In a series of cases beginning with <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute.[15]  In the following case, <u>Heck v. Humphrey</u>, 512 U.S. 477, the Supreme Court addressed a corollary question to that presented in <u>Preiser</u>, <u>i.e.</u>, whether a prisoner could implicitly challenge the constitutionality of his conviction in a civil rights suit seeking only damages (a form of relief not available through a habeas corpus proceeding).  Again, the Court rejected § 1983 as a vehicle to implicitly challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would

---

[15]   In <u>Preiser</u>, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  <u>See</u> <u>Preiser</u>, 411 U.S. 475 at 476.  The prisoners did not seek compensatory damages for the loss of their credits.  <u>See</u> <u>id.</u> at 494.  The Court, however, held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  <u>Id.</u> at 500.

render a conviction or sentence invalid, a § 1983
plaintiff must prove that the conviction or sentence
has been reversed on direct appeal, expunged by
executive order, declared invalid by a state tribunal
authorized to make such determination, or called into
question by a federal court's issuance of a writ of
habeas corpus, 28 U.S.C. § 2254.  A claim for damages
bearing that relationship to a conviction or sentence
that has not been so invalidated is not cognizable
under § 1983.

Id. at 486-87 (footnote omitted).

In light of a prisoner's inability to initiate a valid §
1983 action for wrongful conviction until and unless such
conviction is overturned, Heck coined the concept of prematurity,
pursuant to which "a § 1983 cause of action for damages
attributable to an unconstitutional conviction or sentence does
not accrue until the conviction or sentence has been
invalidated."[16]  Id. at 489-90.

In other words, in the event a prisoner challenges his
conviction under § 1983, but does it prior to invalidation of
that conviction, Heck directs dismissal of such challenges
without prejudice, as premature.  Such prematurity does not imply
substantive invalidity of the prisoner's claims in the future:
this is so simply because a federal court cannot foresee whether

---

[16]  Heck's deferred accrual with regard to challenges to a
prisoner's conviction is, in a way, analogous to the accrual of a
prisoner's claims based on his/her prosecution, where one of the
elements of the tort of malicious prosecution automatically
defers the claim's accrual until the conviction is invalidated.

the prisoner's conviction would be overturned by state or federal courts in the future.[17]

The concept of prematurity is, however, narrow.  It is for that reason the Supreme Court instructed district courts, in determining whether a complaint states a claim under § 1983, to: (a) evaluate whether a favorable outcome in the § 1983 action would necessarily imply the invalidity of the prisoner's criminal judgment; and (b) defer accrual only if such finding is made.

In Wallace v. Kato, 549 U.S. 384, the Supreme Court expressly addressed the question when a § 1983 claim for false arrest in violation of the Fourth Amendment accrues.  The Court held that such claim (and the accompanying claim for false imprisonment) accrues immediately upon the arrest at issue, and the period of limitations begins to run as soon as the false imprisonment ends, i.e., when the arrestee becomes held pursuant to legal process.[18]  "Thereafter, unlawful detention forms part

---

[17]  Here, the holding of Heck is not per se applicable, since Plaintiff – at the time of his initiation of the instant Bivens action – was not convicted and, hence, the deferred accrual articulated in Heck could not have taken place.  See Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010). However, a related concept of deferred adjudication of already-accrued claims, articulated in Wallace v. Kato, derives from the prudential considerations underlying the doctrine of prematurity articulated in Heck v. Humphrey.

[18]  Hence, the injury of false arrest/false imprisonment is be based solely on the events/restraint that takes place from the moment of arrest and until the moment of arrestee being held pursuant to legal process, e.g., arrainment.

of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." Wallace, 549 U.S. at 389-90 (citations and footnote omitted). However, where resolution of a criminal defendant's civil rights challenges might have dispositive effect of the defendant's criminal proceedings, the Wallace v. Kato Court allowed stay.

### 2.   **Stayed Claims Will Remain Stayed**

Here, Plaintiff's original and amended complaint asserted that Plaintiff was arrested without probable cause, that the challenged search was conducted incidental to his arrest, and evidence obtained during that search played the key role during Plaintiff's criminal prosecution.[19]   For the purposes of this

---

[19]   Submissions made in Plaintiff's criminal proceedings indicated that Plaintiff's arrest was conducted upon arrest warrant (which, by definition, supplied probable cause for such arrest), and evidence at issue were obtained as a result of the search of premises where Plaintiff's "employees" were packing controlled substances for him, where police was dispatched to investigate gunfire report, where police requested entry to the premises upon discovering bullet holes and empty shell casings, and where police entered upon obtaining consent of Plaintiff's employees.  In other words, according to the submissions made in Plaintiff's criminal proceedings before Judge Cavanaugh, it appears that the search of the premises was performed with ample probable cause and the produced evidence were legally obtained. See, e.g., Virginia v. Moore, 553 U.S. 164 (2008) (explaining that a rather low bar is set for the purposes of the Forth Amendment probable cause requirement).  The letters from Plaintiff's prior and current counsel indicate these counsel's opinion that exclusionary motions would be factually unwarranted under the circumstances of Plaintiff's case.  The Court, however, stresses that it takes no position on this issue.

Court's sua sponte review, this Court accepted Plaintiff's allegations as true and found that abundance of caution warrants stay of Plaintiff's false arrest and illegal search claims.

The same abundance of caution drives this Court's analysis now.  Plaintiff's letters addressed to Azzarello, his current defense counsel, indicate that Plaintiff wishes to raise suppression challenges on direct appeal, asserting that evidence central to his conviction were fruit of a poisoned tree.  This Court, therefore, finds it warranted to extend stay of Plaintiff's false arrest/illegal search claims until ninety days from: (a) the date when Plaintiff's direct appeal is conclusively denied, with no further appeal possible; or (b) the date when Plaintiff becomes procedurally barred from raising his appellate challenges.

Correspondingly, until and unless such development takes place, Plaintiff shall not assert in this action any claims related to his allegedly false arrest and/or illegal search.

### B.   Claims Raised on Behalf of Gatling

This Court already explained to Plaintiff that, under the Article III claim-or-controversy requirement, Plaintiff has no standing to sue for the wrongs allegedly suffered by Gatling. See Instant Matter, Docket Entry No. 60.  The same was explained to Plaintiff in Telfair et al. v. Office of the U.S. Attorney, Civ. Action No. 10-2958 (GEB) (D.N.J.), Docket Entry No. 4, and

then re-explained, in great detail upon Plaintiff's filing a motion for reconsideration in that action.  See In re Telfair, 745 F. Supp. 2d at 560-62.  Another repeat of the same appears unnecessary.  Therefore, for the remainder of this action, Plaintiff shall not assert any claims on behalf of Gatling.

### C.   Dismissed Claims and Already-Terminated Defendants

The overwhelming volumes of Plaintiff's submissions filed in this action do not allow this Court to determine, with any degree of certainty, whether Plaintiff's still-ongoing references to those Defendants who were terminated (upon this Court's sua sponte dismissal of Plaintiff's initial and amended complaints or upon this Court's grant of summary judgment to Tandy and McAleer) indicate Plaintiff's desire to seek this Court's reconsideration of the aforesaid determinations.  Out of abundance of caution, the Court presumes that at least some of Plaintiff's numerous submissions containing such references (or re-raising the claims already dismissed by this Court) were filed with such a goal.

A motion for reconsideration is a device of limited utility. There are only four grounds upon which a motion for reconsideration might be granted: (1) to correct manifest errors of law or fact upon which the judgment was based; (2) to present newly-discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) to accord the decision to an intervening change in prevailing law.  See 11 Charles A. Wright,

Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2810.1 (2d ed. 1995); <u>see also</u> <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985), <u>cert.</u> <u>denied</u>, 476 U.S. 1171 (1986) (purpose of motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence). "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." <u>Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Twp.</u>, 996 F. Supp. 409, 442 (D.N.J. 1998).  In contrast, mere disagreement with the district court's decision is an inappropriate ground for a motion for reconsideration: such disagreement should be raised through the appellate process.  <u>See</u> <u>id.</u> (citing <u>Bermingham v. Sony Corp. of America, Inc.</u>, 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), <u>aff'd</u>, 37 F.3d 1485 (3d Cir. 1994); <u>G-69 v. Degnan</u>, 748 F. Supp. 274, 275 (D.N.J. 1990)); <u>see also</u> <u>Drysdale v. Woerth</u>, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001) (a motion for reconsideration may not be used as a means to reargue unsuccessful theories).

Here, the Court carefully examined over thousand pages deposited by Plaintiff on the docket in this matter, but could not find a viable ground for reconsideration of this Court's prior determinations.  Correspondingly, for the remainder of this action, Plaintiff shall not re-assert any claims that were

dismissed with prejudice (e.g., challenges against Plaintiff's defense counsel or prosecutors, claims based on Miranda warning, due process and equal protection claims, claims barred by the FTCA, etc.) or those Plaintiff's claims that were dismissed as unripe (i.e., Plaintiff's malicious prosecution challenges), or all Plaintiff's claims against terminated Defendants (e.g., Christy, Bergrin, Tandy, McAleer, etc.).

### D. **Claims Previously Proceeded Under _Conley v. Gibson_**

The foregoing analysis leaves the Court with only two lines of Plaintiff's claims that were proceeded past the sua sponte dismissal stage under the now-archived test set forth in Conley v. Gibson and remained not-disposed-of upon the Court's grant of summary judgment to Tandy and McAleer.

Specifically, these are: (a) Plaintiff's unelaborated-upon claim alleging denial of medical care for Plaintiff's broken hand; and (b) Plaintiff's references to Messrs. McCarthy and Muhammad, and to numerous John Does.[20]  However, even a cursory review of these two lines of claims indicates incongruity between the denial-of-medical-care allegations and the named Defendants, since – in his original and amended complaints – Plaintiff clarified that Ray McCarthy was named solely because he was the

---

[20]  The Court is not entirely clear as to the particular John Does Plaintiff envisioned, since Plaintiff's original and amended complaints suggested that these John Does might be state/municipal police officers, while Plaintiff's multiple later submissions suggested that these John Does might be DEA agents.

Chief of Newark Police Department and that Murad Muhammad was named because he was an officer of Newark Police Department.

Under the now-governing standard articulated in Iqbal, Plaintiff's claims against McCarthy should be dismissed. Absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 169 (1985), and – in addition – supervising officials cannot be held liable for actions of their subordinates unless the litigant asserts facts showing these supervisors' personal involvement in the alleged wrongs.  See Iqbal, 129 S. Ct. 1937; Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993).  With the same token, claims against the supervisors are subject to dismissal if they are based solely on the respondeat superior theory.  See Iqbal, 129 S.Ct. at 1948 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior"); Arqueta v. United States Immigration & Customs Enforcement, 2011 U.S. App. LEXIS 11983 (3d Cir. June 14, 2011).

Since this Court's repeated examination of Plaintiff's original and amended complaints (and of over thousand pages of the submissions made by Plaintiff in this matter after this

30

Court's screening of these two initial rounds of Plaintiff's pleadings) does not indicate that Plaintiff named McCarthy as Defendant in this action on the grounds other than McCarthy's supervisory capacity, Plaintiff's claims against McCarthy will be dismissed with prejudice.

Moreover, Plaintiff's references to Muhammad (and Does) indicates that Plaintiff named them as Defendants in this action because these individuals allegedly partook in Plaintiff and/or Gatling's arrests.  No statement made in Plaintiff's original complaint, amended complaint and the multitude of later submissions links these individuals to the alleged denial of medical care.  Therefore, Plaintiff's claims based on such denial of medical care do not appear to have a defendant named in connection with these claims (and do not provide this Court with any facts except for Plaintiff's self-serving conclusion that medical care was denied to him), while Plaintiff's naming of Muhammad and Does as Defendants is left unaccompanied by any claim other than that already stayed.

These shortcomings warrant dismissal.  However, since the Court cannot rule out the possibility that Plaintiff might be able to cure the deficiencies of his denial-of-medical-care claim by naming the alleged wrongdoers and detailing the facts of that claim, just as Plaintiff might be able to cure the shortcomings of his claims against Muhammad and Does by asserting wrongful

acts personally committed by these individuals (that is, acts other than those underlying the claims already dismissed or stayed by this Court), the Court will allow Plaintiff to amend his denial-of-medical-care claims and claims against Muhammad and Does.

      **E.**    **Effect of the Preclusion Order**

          **1.**    **Plaintiff's Actions Halt Resolution of His Claims**

As of now, Plaintiff docketed - if this Court were to count only his submissions made in this matter - over thousand pages of various submissions; these submissions repeat each other many times over and continuously re-raise claims already dismissed by this Court with or without prejudice.  Moreover, these submissions include hundreds of pages wholly irrelevant to the issues at bar: they apprise this Court of Plaintiff's numerous disciplinary grievances to the OAE (and their progress), Plaintiff's multiple state court legal malpractice suits  (and their progress), Plaintiff's many applications to the Court of Appeals and to the Supreme Court (and their progress), Gatling's criminal proceedings (and their progress), Gatling's education and employment endeavors (and their progress), etc.

Furthermore, Plaintiff's prolific litigious tendencies appear systemic, rather than limited to the instant matter, since Plaintiff filed hundreds of analogously deficient, irrelevant and repetitious documents in his criminal proceedings presided by

Judge Cavanaugh and in his civil action commenced upon his submission of documents mimicking a disciplinary grievance.[21] The Court notes, with great concern, that Judge Cavanaugh's directive not to accept any Plaintiff's pro se submissions in his criminal proceedings and Chief Judge Brown's limited order of preclusion directing Plaintiff to seek leave from this Court for the purposes of filing any unauthorized pro se submission in this action have had no effect whatsoever: Plaintiff continued systemic filing of unauthorized pro se submissions in this matter and in his criminal proceedings after being informed of the aforesaid filing limitations.

This pattern of litigation strongly suggests Plaintiff's inability to focus on the issues at heart of each particular action and/or to give due weight to judicial decisions. Accord In re Telfair, 745 F. Supp. 2d at 559, n. 21 ("Telfair's disregard for the value of a judicial decision is particularly appalling in light of the fact that — with regard to [the case at bar] — a dismissal was entered by the Court of Appeals and then the Supreme Court of the United States had to deny Telfair's six virtually identical applications"). Therefore, a meticulous enforcement of the "limited order of preclusion [might] help [Plaintiff] to: (a) avoid repetitious filings, (b) carefully and

---

[21]  Plaintiff's currently pending appellate proceedings before the Court of Appeals appear to reflect the same tendency.

thoughtfully select his claim; and (c) reduce these claims to clear and concise statements free from needless commentary that reduces the value of his submissions." Id. at 584.

### 2.   Notice Construed as Objections to Preclusion

In connection with the foregoing, the Court finds it warranted to address Plaintiff's Notice, which Plaintiff – in sync with his tendency to file repetitions submissions in the same action and also to file the same submission in different actions – docketed in both the instant matter and Plaintiff's appellate proceedings challenging dismissal of his compilation styled to mimic a disciplinary grievance.  See Instant Matter, Docket Entry No. 72.

Since certain statement made in Plaintiff's Notice could be read as his objections to the limited order of preclusion entered against him, this Court construes Plaintiff's Docket Entry No. 72 accordingly and examines it for the purposes of this action and Plaintiff's future civil actions that might be initiated by Plaintiff in this District pro se and in forma pauperis.[22]

---

[22]   Pursuant to a recently adopted Local Rule, which provides that, "[a] subsequent case or application filed by a pro se plaintiff shall, where feasible and within the appropriate vicinage, be assigned to the Judge to whom the first prior case or application of the plaintiff was assigned," L. Civ. R. 40.1(c), Plaintiff's future pro se civil actions in this District (excluding Plaintiff's § 2255 action), if such matters are commenced, are likely to be assigned to this Court.  However, out of abundance of caution, this Court will direct complimentary filing of this Opinion and accompanying Order in Telfair et al. v. Office of the U.S. Attorney, Civ. Action No. 10-2958 (GEB)

As noted underline{supra}, Plaintiff's <u>Notice</u> mainly asserts challenges to Judge Cavanaugh's order directing the Clerk not to accept any Plaintiff's <u>pro se</u> submissions in his criminal proceedings, where Plaintiff is represented by counsel.[23]   However, a few statements incorporated in the <u>Notice</u> could be read as reflecting on the order of preclusion.   Specifically, one statement seems to assert that Plaintiff's inability to make as many and/or as lengthy filings as he desires endangers Plaintiff's ability to meet temporal procedural requirements, because Plaintiff is concerned that the Clerk's Office might be unavailable on weekends and holidays, or during certain hours, or as a result of incremental weather or failure of the District's electronic filing system. However, as noted <u>supra</u>, Plaintiff's submissions are subject to the prisoner's mailbox rule and, therefore, they cannot be affected by the Clerk's hours or holiday schedule, weather conditions, potential failures of the District's electronic

---

(D.N.J.), in the event the Clerk assigns any future matter, commenced upon receipt of Plaintiff's <u>pro se</u> civil complaint, to another Judge, and such new matter raises preclusion concerns.

[23]   No statement made in this Opinion and accompanying Order shall be construed as expressing this Court's position as to what actions shall or shall not be undertaken by Judge Cavanaugh in connection with Judge Cavanaugh's directive or with the aspect of the preclusion order entered against Plaintiff that might be construed as relevant to Plaintiff's criminal proceedings.   These matter are subject to exclusive discretion of Judge Cavanaugh.

filing system, etc.[24]  Moreover, such matters as weather, electronic failures, or Clerk's holiday hours have no relevance to Plaintiff's preference for filing as many submissions in his actions as he desires or to Plaintiff's preference for making these submissions as voluminous as Plaintiff's whim might dictate.  Therefore, Plaintiff's above-detailed statement, even if construed as objection to enforcement of the limited order of preclusion in this action or in Plaintiff's future non-emergent pro se, in forma pauperis civil rights action in this District, fails to provide a reason for lifting, relaxing or otherwise altering of the preclusion order.

Plaintiff's other statement asserts that the filing limitations might prevent him from "managing and maintaining the momentum" of his litigations.  However, this generic observation equally fails to state a valid reason for non-enforcement of the preclusion order; moreover, it appears that Plaintiff's tendency to swamp the dockets with floods of overly voluminous, obscure and irrelevant documents is more likely to cause Plaintiff loss of "momentum": as it happened in the instant matter.  Conversely, enforcement of the limited order of preclusion compelling Plaintiff to execute clear, concise and on-point documents is

---

[24]   In the event Plaintiff, pursuant to the limited order of preclusion, duly seeks *and* is granted leave to commence a new civil matter, his pleadings in that new matter will be deemed filed on the date when Plaintiff hands his request for such leave to his prison officials.

likely to benefit Plaintiff's cases by narrowing the issues and propelling his actions to resolution on merits.

Therefore, to the degree Plaintiff's <u>Notice</u>, filed by him in this matter as Docket Entry No. 72 and in <u>Telfair et al. v. Office of US Attorney</u>, USCA Civ. Action No. 10-4193 (3d Cir.), was intended to state objections to the preclusion order, the <u>Notice</u> does not warrant either lifting or alteration of the terms of preclusion.

However, this Court is mindful of the Court of Appeals recent observation that: (a) it is insufficient for a district court to merely warn a litigant that the litigant's persistent abusive litigation practices might result in certain unspecified "sanctions"; rather (b) the court shall inform the litigant of the specific sanctions being contemplated and allow the litigant an opportunity to object to these particular sanctions. <u>See</u> <u>Hoffenberg v. Bumb</u>, 2011 U.S. App. LEXIS 11741, at *14 (3d Cir. June 9, 2011) ("The District Court here gave notice to [an abusive <u>pro</u> <u>se</u> litigant] that his failure to [file documents complying with procedural requirements] would result in 'sanctions.'  But the District Court did not afford notice of the *particular* order that it intended to enter placing restrictions upon [the litigant's] right to file [future submissions].  As a result, [the litigant] did not have an opportunity to object [to

the particular sanctions imposed] before the [preclusion] order was entered") (emphasis added).

The Court, therefore, will allow Plaintiff an opportunity to show cause as to why the order of preclusion entered against him should not be enforced (or should be altered or relaxed) in this matter and also in all Plaintiff's future pro se, in forma pauperis civil rights matters, if any, assigned to this Court pursuant to Local Rule 40.1(c).

### 3. Leave Granted at This Juncture

#### a. *Leave to File Amended Complaint*

As detailed supra, Plaintiff's claims can be subdivided into five categories: (a) claims dismissed with prejudice (e.g., claims based solely on respondeat superior theory, claims barred by prosecutorial immunity, claims not meeting the color-of-law requirement, claims based on Miranda warning, claims alleging denial of due process and speedy trial, claims barred by the procedural requirements of the FCTC, claims raised without standing to sue on behalf of Gatling, etc.); (b) claims dismissed as unripe, without prejudice to raising these claims in another civil rights action (i.e., claims asserting malicious prosecution); (c) claims stayed in this action, subject to litigation upon conclusion of Plaintiff's criminal proceedings and direct appeal (i.e., claims asserting illegality of Plaintiff's arrest and search); (d) claims asserting denial of

38

medical care by unspecified individuals under unspecified circumstances, insufficient under the pleading standard detailed of Iqbal; and (e) potentially existing but wholly unstated claims against Muhammad and Does (that is, if this Court were to hypothesize that these claim were meant to assert challenges *other* than those falling within the above-listed categories "(a)" to "(d)").

Consequently, Plaintiff will be granted leave to file an amended complaint; such leave will be granted solely with regard to the "(d)" and "(e)" categories of his claims.  Since the Court is already aware of the Bivens nature of Plaintiff's suit and analogous preliminary matters, Plaintiff's amended complaint shall be reduced to a document not exceeding fifteen pages, single-sided, double-spaced, where:

a.   On the first page, Plaintiff shall list only the names of those Defendants who are implicated by the allegations stated in this amended complaint (or he shall identify these Defendants by other means, such as title, appearance, etc. in the event Plaintiff does not know the actual names of some Defendants);[25]

b.   On each following page:

---

[25]   Cf. Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004) ("Plaintiffs may be unaware of the [exact] identities [of the named defendants, being] unable to conduct a pre-trial investigation to fill in the gaps.  But by itself, this lack of knowledge does not bar entry into a federal court").

i.   Plaintiff shall state, on the top of the page, the name
     of only one, particular Defendant (or identify that
     Defendant by other means, such as title, appearance,
     etc. in the event Plaintiff does not know the actual
     name of that Defendant);

ii.  Under the name/identification of that Defendant,
     Plaintiff shall state the approximate date, month and
     year when the alleged events took place;[26] and

iii. Plaintiff shall dedicate the remainder of that page to
     his discussion of the specific *facts* of his claim
     against that particular Defendant.  In other words,
     Plaintiff shall state the "essential factual
     background" of his claim analogous to "the first
     paragraph of any newspaper story," that is, the "who,
     what, when, where, and how" of the events at issue.
     Institutional Investors Grp. v. Avava, Inc., 564 F.3d
     242, 253 (3d Cir. 2009).  No generalities or self-
     serving conclusory statement, such as assertions that
     the Defendant violated Plaintiff's rights, or bare
     recitals of the elements of a claim, or discussions of

---

[26] Since Plaintiff's original complaint was received by the
Clerk on February 7, 2008, all Plaintiff's allegations based on
the events that took place on or after February 1, 2006, will be
presumed timely for the purposes of the Court's sua sponte
screening of Plaintiff's amended pleading, if such is received.

Plaintiff's emotions and his perceptions of what the
law should be, will suffice.[27]

c.    Since Plaintiff's statement of claims against each Defendant
shall not exceed one page, in the event Plaintiff elects to
submit a fifteen-page amended complaint, that amended
complaint shall state Plaintiff's claims against fourteen
different Defendants (because the first page shall only list
all Defendants implicated in the amended complaint).

Plaintiff's failure to adhere to these simple requirements
will be deemed abuse of leave granted herein.

**b.    *Orders to Show Cause***

Plaintiff was informed of the following filing restrictions
with regard to this matter and Plaintiff's future civil <u>pro</u> <u>se</u>,
<u>in</u> <u>forma</u> <u>pauperis</u> civil rights actions (other than his emergent

---

[27]   For instance, Plaintiff's alleged denial of medical care
claim might read as follows: "Defendant: Officer so-and-so of
such-and-such correctional facility.  Date: On or about such-and-
such date of such-and-such month, such-and-such year.  Facts:
Plaintiff's right (or left) hand was broken as a result of such-
and-such events that took place on such-and-such date.  The bone
fracture caused such-and-such swelling and such-and-such bruises
became visible around the fractured area.  Plaintiff showed his
injured hand to the Defendant and requested permission to see a
doctor; Plaintiff also submitted a form slip requesting medical
attention.  However, Defendant refused to accompany Plaintiff to
the medical department, refused to allow Plaintiff to proceed to
the medical department on his own and refused to file Plaintiff's
medical slip.  In addition, Defendant denied Plaintiff's request
for ice and pain reducing medicine.  Defendant justified his
decision to deny Plaintiff medical care by making such-and-such
statements."

civil rights challenges) that might be initiated in this

District:

> (1)  With regard to [Plaintiff's instant action,
>       Plaintiff] shall seek leave . . . from [this
>       Court] to make any pro se submission [other than
>       that already authorized] before actually making
>       such submission.  Each [such] applications for
>       leave to file a pro se submission shall:
>       a.  Be reduced to one-page, single-sided
>           document;
>       b.  Open with a statement whereas [Plaintiff]
>           shall aver . . . that the particular
>           submission [Plaintiff] seeks leave to file
>           would raise claims or allegations that:
>           (i)   were not [already] presented to
>                 either [this Court] or to any other
>                 judge . . . and, in addition,
>           (ii)  appear bona fide in light of the
>                 guidance [already] provided to
>                 [Plaintiff] by any judge in this
>                 District or by any other court . .
>                 . ; and
>       c.  Summarize the facts that [Plaintiff] intends
>           to assert in his pro se submission, if
>           allowed to file it.  Such summary should be
>           reduced to clear and concise language not
>           exceeding two hundred words.  No
>           generalities, supplications, lectures on law
>           or akin will be deemed a valid summary.
> . . .
> (3)  With regard to any new matter that [Plaintiff]
>      wishes to initiate in this District while acting
>      pro se and proceeding in forma pauperis,
>      [Plaintiff] shall seek leave from the Clerk to
>      initiate such matter.  Such applications . . .
>      shall:
>      a.  Be reduced to one-page, single-sided
>          document;
>      b.  Open with a statement whereas [Plaintiff]
>          shall aver . . . that the pleading
>          [Plaintiff] seeks leave to file would raise
>          claims or allegations that:
>          (i)   were not raised in this District or
>                in any other court at any time in
>                the past . . . ; and, in addition,

          (ii)       appear <u>bona</u> <u>fide</u> in light of the guidance that was [already] provided to [Plaintiff] by any judge in this District or by any other court . . . ; and

     c.   Summarize the nature and facts of the allegations that [Plaintiff] intends to raise in his <u>pro</u> <u>se</u> pleading, if allowed to file it.  Such summary should be reduced to clear and concise language not exceeding two hundred words.  No generalities, supplications, lectures on law or akin will be deemed a valid summary.

<u>In re Telfair</u>, 745 F. Supp. 2d at 584-86.

Plaintiff, therefore, will be directed to submit, within thirty days from the date of entry of the Order accompanying this Opinion, a written statement detailing his objections, if any, to the above quoted restrictions.  Such written statement shall not exceed ten pages, single-sided, double-spaced.  Plaintiff's objections shall be stated separately, clearly identifying which objections relate to the instant matter and which relate to Plaintiff's future civil actions that might be commenced in this District.[28]

---

[28]  Plaintiff shall not reiterate his objections based on Clerk's holiday schedule, Clerk's hours, incremental weather or Plaintiff's speculations about potential failures of this District's electronic filing system: all these objections were already found meritless by this Court.  Analogously, Plaintiff shall not include in his objections such generic statements as Plaintiff's beliefs that he might lose the "momentum" of his actions: these speculative generalities were already ruled meritless by this Court.  Finally, Plaintiff shall not make any references to Gatlin (or to Gatling's ability to commence suit) since the preclusion order did not affect Gatlin.

The Court will adopt the terms of the above-quoted preclusion order for the period of ninety days.  In the event Plaintiff fails to timely file his objections to the preclusion order, or in the event this Court determines, upon examination of Plaintiff's objections, that the terms of preclusion order need not be lifted/related/altered, the preclusion order will remain in effect for the remainder of the instant matter and will be applied to all Plaintiff's future non-emergent pro se, in forma pauperis civil rights actions, be they assigned to this Court upon creation of a new index number or preliminary referred by the Clerk for this Court's review prior to creation of a new index number, with the goal of determining whether Plaintiff shall be granted leave to commence a new pro se, in forma pauperis civil action.

## III. CONCLUSION

For the foregoing reasons, all Plaintiff's motions, letters, notices and analogous documents that were, thus far, left unresolved by this Court's prior decisions, will be dismissed as moot or as not meriting relief.

Plaintiff's claims previously stayed by this Court will remain stayed; such stay will continue for ninety days after conclusion of Plaintiff's currently undergoing criminal proceedings and his direct appeal, if such is undertaken.

44

Plaintiff's currently pending challenges asserting denial of medical care by unspecified individuals under unspecified circumstances will be dismissed without prejudice.  Analogously, Plaintiff's currently pending unstated claims against Defendants Muhammad and Does will be dismissed without prejudice.  Plaintiff will be granted leave to submit an amended complaint detailing the facts of his claims based on the alleged denial of medical care and his claims against Defendants Muhammad and Does, provided that the latter line of claims does not re-raise claims already dismissed or stayed in this Court's prior decisions.

The limited order of preclusion entered against Plaintiff will be adopted, as the law of this case, for the period of ninety days.  Plaintiff will be allowed to show cause as to why this order of preclusion should not govern the remainder of this matter and Plaintiff's future non-emergent pro se, in forma pauperis civil rights actions assigned to this Court or referred for this Court's review.

An appropriate Order accompanies this Opinion.

s/William J. Martini

_____
**William J. Martini,**
**United States District Judge**

Dated: 23rd day of June, 2011